May it please the Court, my name is Michael Meehan. I represent the New Times, its editor Mr. Lacey, its publisher Mr. Larkin. I will endeavor to reserve two minutes of my time for rebuttal. This is a de novo review of a dismissal of a complaint for failure to state a claim. The complaint alleged that Sheriff Arpaio retaliated when the New Times put lawfully obtained, truthful information on the net which it was entitled to and did publish in its newspaper without fear of any recrimination or without violation of any statute. It is also a complaint that alleged that Sheriff Arpaio and the other defendants, the Special Prosecutor Wilenschek and the appointing prosecutor Thomas, had conspired to again retaliate when the New Times published a story about abuses of a supposed or assumed grand jury procedure when in fact there had been no grand jury procedure at all. Can you clear up the record on the grand jury question? The state court Judge Baca referenced a grand jury matter in testimony in the record and she mentioned that there was a grand jury case. The district court in its order mentioned a pending grand jury matter as I read it and the district court also concluded that the New Times plaintiffs believed that they were disclosing material from a grand jury proceeding. Was there a grand jury or wasn't there? Well, as I think both sides have either conceded or argued, there certainly were grand juries, one or more grand juries, sitting in that county of the state of Arizona at the time. What is the critical fact, though, and what is something that both the state court and the district court concluded was that this special prosecutor should have done one of two things and did neither. Should have either obtained grand jury concurrence to issue the subpoena or should have within ten days informed either the grand jury or a judge that was supervising the grand jury of the issuance of the subpoena. So we know Willinschek didn't do the former. Nor the latter. And then as to the latter, the problem with the subpoenas was that he did not report them to the grand jury or to the supervising state judge? Yes, Your Honor. And, of course, you alluded to or you mentioned the fact that at the time that the story was published, the New Times thought that it probably was violating the statute, but that's really not the point. It was not. If Willinschek had the power to issue subpoenas as a special prosecutor, why doesn't that implicate the grand jury secrecy statute, even if it's later determined that he failed to report the activity in timely matter? Your Honor, he did not have that power. I thought you just said that he did, as long as he reported within ten days. Well, I didn't phrase it in terms of power. What I said was that in order for it to be a valid subpoena, he needed to do that. And I forget, quite frankly, whether it was the state court, the federal district court, or both, but one of them made an express finding that, in fact, the prosecutor does not have any common law powers incited in Arizona appellate case to that effect. So this was, if you will, either a precondition or a subsequent condition, but I think that it's useful in analyzing that issue if the court remembers that what the statute prohibiting publication of grand jury information says is that one may not publish results or decisions of a grand jury, it may not publish evidence of a grand jury, or it may not publish other matter attendant to the grand jury. And this was never attendant to the grand jury.  And we're on a motion to dismiss. I mean, wasn't there pending motions to quash the subpoenas? Yeah. I'm just confused under Arizona law why the newspaper can publish the subpoenas, even if they're later found to have been improperly issued. Well, Your Honor, because the only possible probable cause for this arrest is a reason to believe that the statute was violated. In order for the special prosecutor and for the sheriff, whom he advised on the arrest according to the allegations of a claim to have reasonable cause, is to know that he had, in fact, something that was attendant to a grand jury. And this was not. He knew it was not. At the time, New Times did not know it was not, but that really is not germane to the issue of whether there was probable cause in the minds of the defendants to do so. New Times thought they were violating the statute, but fortunately for them, in retrospect, they weren't. Is that your position? Well, I think that's a fair characterization that they thought they weren't. But I might say that when you get down to it, and the facts are well briefed and discussed, and I won't get into them in detail, but this was a situation where they felt that this was an egregious abuse of the process. And although we haven't talked that much about it, way back in Bransburg v. Hayes, Justice Powell, in his concurring opinion, which is the rule of law for that case, said in cases where it is apparent that the grand jury process is being used to harass or abuse the press, then the First Amendment comes into play. In your complaint, counsel, are there adequate facts for me to determine that the grand jury subpoenas alleged were issued, that they were published after the time where the prosecutor needed to report them? Yes, Your Honor, because, and I'm sorry, I don't have the paragraph numbers, but it's in the preliminary allegations. It does set out the date when the subpoenas were issued and the date when the story was published, and it was somewhere in the neighborhood of a month. But that's something that I checked yesterday, and I guess I should have noted the paragraph number, but it is in there, and I believe it's in the preliminary allegations of the complaint. Let me ask you a question, as long as I have a little bit of time here, or I've taken it. What is there in here on the Maricopa County Attorney's Office? Is that really not before us? I mean, whether I should affirm the district court's dismissal of the Maricopa County Attorney's Office on the grounds that they're a non-jural entity immune from suit. As I understand it, that was dismissed by the district court in the first complaint. The amended complaint didn't allege such an allegation, and I guess I'm trying to figure out how I can get them then. Your Honor, we do not have before this Court that slice, if you will, of the county, the Thomas agency. Mr. Thomas, of course, is the elected official and is in. We submit because he should not have the absolute amenity, and the county is in for the reasons alleged. And what the district court did, other than the non-jural entity, which we are not arguing, is to say that because the district court concluded that there was no First Amendment violation, and because the district court concluded that there was no adequate pleading of a lack of probable cause, that therefore the cases against the county and alternatively some of the claims that might have been against Mr. Thomas were dismissed. So I think this case really presents the two issues that permeate various aspects and claims of the district court's ruling, and that is, number one, the First Amendment issue, and number two, the lack of probable cause. And as to Maricopa County itself, I didn't see anything in there about the district court's decision about Monell or Canton. I really didn't see anything in there from the district court on those claims at all. The only thing the district court ever said was this was no constitutional violation. So as to Maricopa County, is remand appropriate just to let the district court determine if Monell and Canton apply? Yes, Your Honor, I think that's true. There are cases in which this Court has said there are some circumstances where you could hold an issue and reach that, but I submit this is not one that the district court really get into much. And also, and I think this is important to remember, we're on a 12b-6 motion. We have not had even a summary judgment proceeding, which a lot of the cases of this Court about 1983 claims arise, or a trial on the merits. So I think it would be appropriate to remand because the district court did only rest upon the First Amendment and lack of probable cause issues. Well, I'm just trying to get rid of defendants or those that are in front of me in claims and think about what we have in this record about them. So I guess my next idea is to go to the sheriff. If I get to the sheriff, what is there in this record on the complaint or anyplace else that alleges that the sheriff had anything to do with the issuance of the subpoenas? Well, Your Honor, there is an allegation in the complaint in which his principal deputy, Hendershot, said that he ordered it. I think that one can certainly infer that this was something that was... One can infer from what? If his principal deputy has a chance to do this, how can one infer the sheriff was involved from the allegations of the complaint? Because there are allegations of meetings and discussions among Thomas and the sheriff. There are allegations that there was discussion on this topic, and I think one can certainly infer... Well, but neither party alleges or even disputes the sheriff was not present at the time of the arrest, right? Correct? That's true. And the affidavit of Hendershot says nothing about what the sheriff did or didn't do, correct? Yes. So how does a reasonable jury conclude then the sheriff authorized or was in any way involved? Well, let me answer that in two steps. Rule 8A2 gives me something I have to look at, and I have to determine if there's some concise claim here. And I'm not supposed to be, I guess, under our recent stuff from the Supreme Court trying to make this speculative and can't get it out of a bald accusation, so I'm trying to figure out this complaint, how I get there. Well, let me say two things on that. Number one, that we are on a 12B6, and your question was, Couch, and how is a jury to conclude? And so we're entitled to every conceivable inference and what the evidence might prove. Given your allegations of the complaint. That's true. But I would suggest that the court may and should use the same kind of review that was in the Gilbrook case, which we cited, the firefighter case, in which the court said that there was evidence adequate to find a conspiracy arising out of a series of meetings, arising out of a caustic political environment. We have allegations. Well, I only found three paragraphs where there was anything to do with the sheriff in your complaint. One was in paragraph 110, one was in paragraph 112, and another in paragraph 114. But in none of those paragraphs does it do any more than make a bald accusation. I found no evidence, nothing, no facts. Well, Your Honor. Tell me where there's facts, and I'll be glad to look at them. I would say in paragraph 51, where there's an allegation that Thomas and Arpaio had met, paragraph 54 on page 140. Just the fact they met? To discuss his unhappiness with the New Times, his demand that something be done with respect to New Times. How do you link that up to the arrest based on the grand jury secrecy? Because we allege, and I think are entitled to an opportunity to prove, that the sheriff set in motion the series of events. He continued to press for the investigation. He and his office did talk with Wilenshek about the arrest. We have a conspiracy allegation. The conspirators don't all need to know, in fact, even all of the things that were done. And I submit that we have well pleaded, well beyond the notice pleading that we are required to do. This is not a 9B situation, for example. There are cases that we have cited to this Court which says that this is not a special pleading burden any greater than what we would normally have for any other case. Go ahead. All I was saying is I suspect that there are two allegations here. One is about the investigation, and one is about the arrest. That's why I focused on the arrest, and I wondered if you could give me a couple of parts of the complaint that really dealt with that. Well, and you did, I believe, mention Judge Smith's allegation in paragraph 110, which says our power to direct and approve. I did, which does nothing more than make, in my mind, a bald accusation. Well, the allegation is that he had directed and approved the arrests. Right. I mean, you provided a lot of detail in this complaint elsewhere. Is there anything in here to back up paragraph 110? You don't have a date. You don't have a time. You don't have a meeting. You don't have a subsequent admission. You don't have a confession by a law partner. Those are other things that you provided elsewhere in the complaint. But there isn't anything in paragraph 110 other than just saying our pilot talked with Willinshack. There is not. On the other hand, as I said, we are not under an enhanced pleading standard, and I think that is an allegation of fact. It is not an allegation or a conclusion of law. It is an allegation of fact that he directed and approved the arrests. Well, it says it was directed by Arpaio and or his aides. Yes. Which would, as I read it, it means that under your allegation, Arpaio was not involved. No, Your Honor. I submit that it says that we're going to be able to prove that we may very well prove under the pleading standard that it was directed by Arpaio. Or may not be. Arpaio and. It might be one thing if you had sued Chief Hendershot, the and or, that might have worked. But if you've got, if it's Arpaio or Hendershot and only Arpaio has been sued, then if it was, if it turns out to be Hendershot, then you're out of luck. Your Honor, I submit it strains credulity to say that we could not prove under any conceivable set of facts that Sheriff Arpaio was aware of and involved in this, given the long history of animus, of meetings, of demands for action, of involvement, of approving the hiring of Willinshack. All of these things, I submit that we have well pleaded a basis upon which we can prove that Sheriff Joe Arpaio was in it up to his neck, approved it, and directed it. And we said, I think, adequately in 110, under the basic pleading standard that we have, that he was. I will ask the Court's indulgence perhaps for a minute to rebut, but I will await the Court's decision on that. Thank you. Counsel, as you approach the bench, do you have an agreement on sharing time? We do, Your Honor. I'm Eileen Gilbride here for Sheriff Arpaio. Co-counsel and I have agreed to split five minutes each for the argument. I'm going to attempt to keep to my five minutes and give them five minutes each. Okay, so that's five minutes for each of the three counsels. Yes, exactly so. Again, Eileen Gilbride for Defendant Arpaio. I'm going to try to make five points in five minutes. I might get there, I might not. First, plaintiff's briefs continue mixing up the defendants, mixing up their claims, and mixing the actions all together in an attempt not to have to state a claim against each defendant. For example, their reply is written as if Sheriff Arpaio actually investigated them, but he didn't. Their reply is written as if they were arrested for publishing his address on the Internet. They weren't. Although we are looking at the complaint, not their reply. That's true, and that's what I would. If you could focus on the deficiencies in the complaint, I think that would be most helpful. Well, absolutely. And when you compare the reply with the actual complaint, that's why we need to affirm, because the reply is not written as the complaint is. As Judge Smith noted, there are two claims here against Arpaio. One is he asked for an investigation into a potential crime. Second, plaintiffs were arrested for publishing grand jury material. Those are the two claims at issue. Second point, there is no issue here as to the constitutionality of the statutes involved. Again, the reply brief goes in at length about the constitutionality of the statutes. No one ever raised that below. No one alleged it below. No one asked for declaratory relief below. No one ever argued that the statutes were so facially unconstitutional that no one should have relied on them. The constitutionality of the statutes is not at issue. The only thing at issue is the defendant's conduct under valid statutes. Well, but they allege if Mr. Willenschick knew that the subpoenas were invalid yet issued them and then played some part after consultation with Mr. Arpaio to have the plaintiffs arrested. That gets to the next issue, which is their, well, the fourth issue, the probable cause for their arrest for publishing grand jury material. And the district court found there was probable cause, and the complaint actually alleges facts that show probable cause. They knew that they were publishing grand jury subpoenas. They took the risk. Well, opposing counsel just said there was no grand jury and the 10-day return date had passed, so the subpoenas were invalid, and any prosecutor would have known that. What's the, where's the probable cause at that point? Arpaio is not the prosecutor, A. And B, the statute does not prohibit the publication of only valid subpoenas or valid grand jury material. The statute prohibits the publication of all grand jury material, and for good reason. There is a State process for challenging the validity of those subpoenas. Plaintiffs were warned to use that process and not to publish in their tabloid, and they did it anyway. Were there motions to quash? There were motions to quash. When were those filed? Yes. There were motions to quash, but they had not been decided by the time they published their material in the tabloid. Judge Baca found a month later that the subpoenas were invalid, but they had already long published their material. The third point is that Sheriff Arpaio, only as the potential victim of a crime, pressed the county attorney to investigate that probable crime, and that just does not state a Federal claim. The reply brief says the statute, the publication, the address, publication statute, shouldn't say what it does. Let me ask you a question, ma'am. Doesn't the statute itself really suggest that there have to be some imminent threat in order to pursue under the statute some investigation? It suggests that might be a fact question under the merits of the statute, yes. I'm trying to figure out here now, giving the plaintiff every benefit of the doubt under the complaint, that if this is supposed to be an imminent threat, and there was six months elapsed before the sheriff even did anything, it was longer than that before anyone did anything about it, I guess I'm trying to figure out what in here suggests this is an imminent threat. The readers of this newspaper were not a serious threat to the sheriff. The newspaper is in a mainstream publication. There were two prosecutors said there was no probable cause for arrest based on this particular statute. I guess I'm trying to figure out how I can find in this particular instance that the sheriff should not have some at least alleged liability for investigation. Well, respectfully, Your Honor, the sheriff isn't the one who investigated. Willinchick investigated. All the sheriff did was ask the county attorney to please investigate what might be a crime against him as the crime victim. That does not state a claim. So if the manner of the investigation is something the Court has a question about, it should address those questions to Willinchick's lawyer. All he did was, as the victim or potential victim of a crime, ask for an investigation, and there's not a Federal claim there. Fourth, it's not unconstitutional for the plaintiffs to be... You may want to watch your time. You're now down under your five minutes. Yes, Your Honor. I'll go to my last point, which is the district court properly ruled Sheriff Arpaio had qualified immunity. The law was not clearly established because no one had ever invalidated conduct under these two statutes, and a reasonable officer could believe that Sheriff Arpaio's actions were proper. I'll cede my time now. May it please the Court. My name is Scott Zwillinger. I am here on behalf of Special Prosecutor Dennis Willinchick. What I want to do, if the Court allows, with my brief time, is discuss the absolute immunity. We brought a cross appeal in this matter, and we think that Mr. Willinchick is entitled to immunity. As the Court pointed out, there are effectively two sets of claims here, ones that arise from the arrest and ones that arise from the subpoena. In regard to the ones that arise from the arrest, there can be no doubt that Mr. Willinchick is entitled to absolute immunity. The institution of criminal proceedings has been held time and time again as protected by absolute immunity. So those claims, the district court improperly found that Mr. Willinchick could potentially have liability for them. Now, ultimately, they found him qualifiably immune, but that permitted state law tort claims to be maintained, and Mr. Willinchick, as a prosecutor, is having to address those. So the denial of absolute immunity, as it relates to the arrest, is a significant error that was made. Well, wasn't there allegations that Mr. Willinchick knew that there was no probable cause to believe that the grand jury secrecy statute had been violated because the subpoenas were invalid? There was never an impaneled grand jury. He never returned the subpoenas. So why would there be a basis for arrest in this case? Because, as Ms. Gilbert points out, there was a process, a state law process, in place to challenge the subpoenas. There were motions to quash files. They were going to be opposed. They were opposed. As the record reflected from Judge Baca, she accepted motions and set a hearing on the motions as to whether or not the subpoenas were processed. I would point to the Usher v. City of Los Angeles case. So the special prosecutor, knowing all this, knowing there's pending motions to quash, knowing that his subpoenas weren't returned properly under state law, can order the arrest of these folks in the middle of the night? Well, no, because, again, and also during that hearing, the request was made by the newspaper to publish the subpoenas. And the judge told him, no, we're going to resolve this issue on grand jury confidentiality before you're going to publish them. And he had a position taken down in the motion to quash hearing. He thought he was going to be successful. Ultimately, it's correct. He was not, and the judge ruled against them. But that process needed to be respected. And really what this lawsuit is about is the newspaper deciding that they're going to take the process onto themselves, that they are entitled to some super protection under the First Amendment, and that they do not have to follow the process. The process here, if the subpoenas were invalid, and we can see they were, was to allow the – But in the area of the First Amendment, we do accord some special protection to institutions and individuals who may be chilled in their – in the exercise of their First Amendment rights. In other words, we may find that it's inappropriate for an institution such as a newspaper to have to go in and quash subpoenas, let's say repeatedly, simply because there's a process available if we have public officials who are abusing the process. But there's a balancing test there. It's not an automatic exception to the First Amendment. And again, here, what we would say, when the process exists, it wasn't like there was no ability, no place that they could go and challenge these subpoenas. They were actively engaged in that. And in addition, as we said in our brief, they were also challenging the constitutionality of the statute. So they were utilizing the remedies that were available to them. Challenging the constitutionality, which the statute – I'm sorry, I apologize. The statute that ultimately they were being determined whether – Milosevic was trying to make the determination of whether to seek an indictment for or not. That statute – That is the publication of the address. Yes, sir. Yes. And so those processes, again, had to be respected. Now, ultimately, the newspaper might have been successful. We don't know because it was short-circuited by the publication of these subpoenas. But that story was published long after the subpoenas should have been returned to the grand jury or to the judge, and they weren't done. At the point of the publication, the subpoenas were invalid. They didn't comply with the state law. I can see that it appears, based on – at least on the complaint, it may be different after discovery, that a mistake was made by the special prosecutor. But again, that doesn't give you a reason to short-circuit the process. How did New Times violate the law then? Well, first off, they were ordered by a judge not to turn them over. And again, it's this – You know, we're not – as the district court said, you know, the question isn't whether they violated the state judge's orders, whether they violated the statute. Understood. But, again, as the confidentiality statute does not say only valid grand jury subpoenas. They're valid until the judge says they're not valid. And this process was going forward. There were hearings set to determine that. And so you can't simply ignore that. I want to – if I may talk very – I guess my biggest problem with the whole of this is that unless the prosecutor knows that what he's doing is legal, unless the prosecutor knows that what he's doing is the way it needs to be done, if he plans and executes a raid, it's not – he doesn't have any absolute immunity at all. And that's what we're really at. That's the question of fact given what's in the plaintiff's complaint that I have trouble with on your absolute immunity claim. Understood. But the problem becomes that you're starting to read into intent of the prosecutor what the prosecutor knew and what did not. And intent allegations are not supposed to be part of the immunity analysis. Perhaps this prosecutor makes mistakes. Lawyers make mistakes. Prosecutors make mistakes. But to jump to the intentional tort of a Section 1983 claim based on intent is – should be outside the immunity analysis. Perhaps that leads to a State law tort claim, but – or an abusive process or not. But it doesn't have anything to do with the immunity analysis. I reserve the remainder of my time. Thank you, Mr. Casey. Thank you.  Good morning, Your Honors. Tim Casey. May it please the Court. I represent the Appalee County Attorney, Andrew Thomas. Respectfully submit to you that that probably the issue, the legal issues before you there, are probably the easiest ones for this Court to affirm. It is a de novo standard of review. The sole reason – How come you required all the five? No. Actually, I think I may. I'm just doing that. Okay. Thank you. I'm just giving you the ball. I'm not so sure it's that easy a question in any event. Yes, sir. You have a county attorney hiring a special prosecutor to, at this point, conduct an investigation as to whether there's probable cause to believe a crime has been committed. The results of that investigation may lead to a prosecution, but why isn't Mr. Thomas' decision to hire somebody to investigate well on the investigative side under the Supreme Court's functional analysis rather than implicating the judicial process side? Two parts to that answer. First of all, technically, Maricopa County, the Board of Supervisors, had to hire because they have the power of the person. The second issue is that Mr. Thomas, as the elected official, the county attorney and the state advocate, he's the one that had to select. The reason the selection of any prosecutor is intimately part of the judicial phase of the criminal process is because it requires judgment, it requires discretion, it requires legal knowledge, it requires experience in the criminal process. Well, I'll spot you that, but that's true about whether to conduct a raid on a, you know, crack house to find evidence. There's questions about probable cause and other issues, but we're a long way away from charging a crime here when Mr. Thomas made the decision to hire. And if plaintiffs allege that he hired a crony to conduct a witch hunt in the investigation, regardless of whether there was ultimately, you know, crimes charged, why doesn't that keep us on the investigative side of the Supreme Court's absolute immunity cases? Well, because the court looks to the functionality of what is being done, not necessarily, obviously, the actor who's doing it. And the function is hiring. The function isn't prosecuting. The function is hiring. The function is selection of a person that is going to be making all the decisions on whether to charge directly, whether to do a criminal grand jury indictment or bring an indictment, what type of evidence to present, if any, at trial, what witnesses to do, all of those things. And if you look at the decisions that we've cited, the courts, the Supreme Court and this court have never created a bright-line test that you only have the ability to, I'm looking, I'm lost right now for the phrase, but the bright-line test is you somehow have to have probable cause or you have to have a grand jury proceeding pending at that point in order for there to be a judicial phase. Is the decision to hire a lawyer into a prosecutor's office then entitled to absolute immunity? No. But staffing of a case is, and the determination of that staffing has been held by the circuit and obviously by the Supreme Court, but not the employer-employee aspect. Thank you. I want to take up Judge Timkovich's question just a little bit. Yes, sir. The hiring of an attorney into the office could be challenged by somebody else in a case who was prosecuted by that. Let's suppose it was an assistant U.S. attorney. So the hiring of an assistant U.S. attorney is not entitled to absolute immunity, which means that perhaps when that assistant U.S. attorney brings a prosecution, a defendant can challenge the act as unconstitutional? I'm missing something here. The mere hiring of Tim Casey into your office. Well, I understand the problem when we have an AUSA who says you didn't promote me because of my race or somebody, an applicant who says you didn't hire me as an assistant U.S. attorney because of my race. Nobody gets absolute immunity in that case. Right. But when somebody is actually hired, you actually have a case where you're now talking about a defendant who is now challenging a hiring decision that was done some time before. Yeah, and I think, and I'm not sure what my answer was before, but I clearly believe that it is not. I think the law suggests or indicates that you do not have absolute immunity for the employer-employee decisions. But for the hiring decisions, for the selection decision, for staffing on a particular case, not just general matters for an office-wide involvement or training, but for a particular case, there is absolute immunity. And that comes from what? From what case? I mean, we're really distinguishing between investigatory or administrative functions or those where they're really going to trial, aren't we? That's what we're really trying to decide? No. The court has never said you've got to have a trial in process or even probable cause or even a grand jury going on in order to have something so intimately associated with judicial process. A quick answer. I was just looking at it. The Camp decision versus Goldstein, the United States Supreme Court decision. Van Camp? Van Camp, yes, sir. Yes, Van Camp. Well, that says the prosecutor trained and supervised prosecutors and the decisions were directly linked to the conduct of the trial and necessarily required legal knowledge and the exercise of related discretion. And I guess what I was looking at and thinking of and answering the other judge's comment is and I'll try to find the page here, but it says, that is true in part for the practical reason that it will often prove difficult to draw a line between general and the emphasis on general office supervision or office training, say, related to Giglio, that decision, and specific supervision or training related to a particular case. Granted, it does not talk about hiring decisions, but my analysis is that it would extend there as well. Thank you, Your Honors. Thank you. Your Honor, I have five very concise things to say if I may. Number one, in paragraph 114 of the complaint, it is alleged that Willinchick authorized and advised Arpaio to arrest. Number two, the subpoenas were issued on August the 24th, complaint paragraph 82. The arrests were made on October 18th, complaint paragraph 3. Number three, what you just heard about immunity. But the crime, if it occurred, it also occurred on October 18th. Yes, but I make the point, Judge, because you asked me about whether the 10-day period had elapsed. Yes. And it had. That's the only reason I raise it now. Number three, let's look at the Buckley case, which does say that there can be no immunity until a decision to charge has been made or until probable cause occurs, and talks about advocacy in connection with preparation for a pending proceeding, prosecution, a probable cause hearing, et cetera. But here there was no, we submit no probable cause. Certainly there was no, had been no decision made to prosecute. And there was no proceeding, we submit, because there was no attendant to the grand jury. So the Buckley case, I think, is important. And in that connection, I think, Judge Bybee, you're hypothetical about, can a defendant challenge the hiring of an AUSA? Let's remember that we're talking in the context of a complaint that alleges the violation of constitutional rights by virtue of specific things. And so you're hypothetical, I think, probably is not within the sweep of what we're talking about. We're talking about. I didn't think it was either. Okay. But I'm still trying to figure, I'm having some difficulty figuring out how you're suing Thomas in this case. Because of the fact that he was, A, part of the conspiracy, and B, did select Willinsheck. And I submit that. The selection of Willinsheck, that violates a constitutional right? Because it was part, yeah, because he hired Willinsheck, whom he knew to have animus towards the New Times, whom he knew was going to do an investigation, who he did that because he wanted to help Arpaio retaliate for the violation, in the violation of the New Times' First Amendment rights. That, I think, is the crux of it. He knew these things, and he wanted to help. We have alleged in the complaint that he wanted to help Arpaio do this. And then, finally, what the state court did or didn't order the New Times to do, and what New Times did or didn't do in response to it, really is not germane here. Because, of course, as I think one of the panel mentioned, certainly the sheriff could not arrest under the statute, because he thought that Judge Baca might sometime in the future find that her cautionary remarks, not an order, had been violated. And so we would ask that you reverse. Thank you. Thank you, counsel, for the argument. Lacey v. Arpaio is ordered submitted. And with that, we have concluded today's calendar and the calendar for the week. So the court stands adjourned.
judges: Tymkovich, Bybee, Smith N. R.